# EXHIBIT D

LEXSEE 140 CAL. APP. 4TH 1256, 1278

MARIA G. QUIROZ, Plaintiff and Appellant, v. SEVENTH AVENUE CENTER et al., Defendants and Respondents.

H028298

COURT OF APPEAL OF CALIFORNIA, SIXTH APPELLATE DISTRICT

140 Cal. App. 4th 1256; 45 Cal. Rptr. 3d 222; 2006 Cal. App. LEXIS 984; 2006 Cal. Daily Op. Service 5880; 2006 Daily Journal DAR 8248

June 27, 2006, Filed

**PRIOR HISTORY:** [***1] Superior Court of Santa Cruz County, No. CV143176, Robert A. Atack.

**SUMMARY:**

CALIFORNIA OFFICIAL REPORTS SUMMARY

The trial court entered judgment in favor of a skilled nursing facility and its employees in an action that arose from the untimely death of a dependent adult who resided at the nursing facility, brought by plaintiff, in her capacity as the decedent's representative and on her own behalf as the decedent's mother. At issue on appeal was whether an untimely pleaded survivor cause of action, through which plaintiff, as the decedent's successor in interest, sought damages pursuant to *Code Civ. Proc., § 377.34*, for the decedent's predeath injuries, as well as heightened remedies under the Elder Abuse Act (*Welf. & Inst. Code, § 15600 et seq.*), related back to a timely filed cause of action for wrongful death through which plaintiff sought only compensation for her own injuries under *Code Civ. Proc., § 377.61*. (Superior Court of Santa Cruz County, No. CV143176, Robert B. Atack.)

The Court of Appeal affirmed, holding that the trial court correctly viewed the untimely survivor cause of action as pleading a different injury than the original cause of action for wrongful death. The survivor cause of action was asserted by a technically different plaintiff (the decedent's mother) asserting an independent and greater liability against defendants. The new claim was first asserted after the running of the statute of limitations, and because the injuries to be compensated by the two claims were different, the relation-back doctrine did not apply. The survivor cause of action, whether construed as a claim for negligence or for statutory dependent-adult abuse, was therefore barred. Plaintiff was not entitled to the heightened remedies available under the act in conjunction with her own wrongful death claim, which she voluntarily dismissed in any event. Under the act, the claims and remedies are afforded only to victims of elder or dependent adult abuse. In the event of the victim's death, the cause of action survives, in which case it becomes a survivor action pursued by the personal representative of the estate or the decedent's successor in interest on the decedent's behalf. The doctrine of negligence per se did not furnish plaintiff with an independent claim or basis of liability. (Opinion by Duffy, J., with Rushing, P. J., and Premo, J., concurring.) [*1257]

**HEADNOTES**

CALIFORNIA OFFICIAL REPORTS HEADNOTES
Classified to California Digest of Official Reports

**(1) Wrongful Death § 3--Right of Action--Statutorily Created--Potential Plaintiffs.**--At common law, personal tort claims expired when either the victim or the tortfeasor died. Today, a cause of action for wrongful death exists only by virtue of legislative grace. The statutorily created wrongful death cause of action does not effect a survival of the decedent's cause of action. Instead, it gives to the representative a totally new right of action, on different principles. The cause of action for wrongful death belongs not to the decedent or prospective decedent, but to the persons specified by statute. It is a new cause of action that arises on the death of the decedent and it is vested in the decedent's heirs. A cause of action for wrongful death is thus a statutory claim (*Code Civ. Proc., §§ 377.60-377.62*). Its purpose is to compensate specified persons--heirs--for the loss of companionship and for other losses suffered as a result of a decedent's death. Persons with standing to bring a wrongful death claim are enumerated at *Code Civ. Proc., § 377.60*. The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the re-

Case 3:07-cv-03747-PJH    Document 48-5    Filed 03/26/2008    Page 3 of 20

Page 2
140 Cal. App. 4th 1256, *; 45 Cal. Rptr. 3d 222, **;
2006 Cal. App. LEXIS 984, ***; 2006 Cal. Daily Op. Service 5880

ing death, and the damages, consisting of the pecuniary loss suffered by the heirs. The wrongful death statute limits the right of recovery to a class of persons who, because of their relation to the deceased, are presumed to be injured by his or her death and bars claims by persons who are not in the chain of intestate succession.

**(2) Wrongful Death § 14--Damages--Loss of Services, Comfort, and Society--Limitations.**--Damages awarded to an heir in a wrongful death action are in the nature of compensation for personal injury to the heir. A plaintiff in a wrongful death action is entitled to recover damages for his own pecuniary loss, which may include (1) the loss of the decedent's financial support, services, training and advice, and (2) the pecuniary value of the decedent's society and companionship--but he may not recover for such things as the grief or sorrow attendant upon the death of a loved one, or for his sad emotions, or for the sentimental value of the loss (*Code Civ. Proc., § 377.61*). The damages recoverable in a wrongful death action are expressly limited to those not recoverable in a survivor action under *Code Civ. Proc., § 377.34 (§ 377.61)*.

**(3) Abatement, Survival, and Revival § 12--Survival--Actions--Potential Plaintiffs.**--Unlike a cause of action for wrongful death, a survivor cause of action is not a new cause of action that vests in the heirs on the death of the decedent. It is instead a separate and distinct [*1258] cause of action which belonged to the decedent before death but, by statute, survives that event. The survival statutes do not create a cause of action. Rather, they merely prevent the abatement of the cause of action of the injured person and provide for its enforcement by or against the personal representative of the deceased. A cause of action that survives the death of a person passes to the decedent's successor in interest and is enforceable by the decedent's personal representative or, if none, by the decedent's successor in interest (*Code Civ. Proc., § 377.30*). In the typical survivor action, the damages recoverable by a personal representative or successor in interest on a decedent's cause of action are limited by statute to the loss or damage that the decedent sustained or incurred before death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had the decedent lived, and do not include damages for pain, suffering, or disfigurement (*Code Civ. Proc., § 377.34*).

**(4) Abatement, Survival, and Revival § 12--Survival--Actions--Elder Abuse Act Claims--Damages for Decedent's Predeath Pain and Suffering.**--There is at least one exception to the rule that damages for a decedent's predeath pain and suffering are not recoverable in a survivor action. Such damages are expressly recoverable in a survivor action under the Elder Abuse Act (*Welf. & Inst. Code, § 15600 et seq.*) if certain conditions are met. Specifically, *Welf. & Inst. Code, § 15657*, provides for heightened remedies, including recovery for the decedent's predeath pain, suffering, and disfigurement, to a successor in interest to a decedent's cause of action where it is proven by clear and convincing evidence that a defendant is liable for physical abuse as defined in *Welf. & Inst. Code, § 15610.63*, or neglect as defined in *Welf. & Inst. Code, § 15610.57*, and that the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of this abuse in addition to all other remedies provided by law (*§ 15657, subds. (a) & (b)*). The ability of the decedent's successor in interest to recover damages for the decedent's predeath pain, suffering, or disfigurement under this section specifically trumps the general prohibition on such recovery provided at *Code Civ. Proc., § 377.34 (§ 15657, subd. (b))*. It is also expressly subject to the dollar amount limitation of *Civ. Code, § 3333.2*--a maximum of $ 250,000 for noneconomic losses in an action for injury against a health care provider based on professional negligence (*§ 15657, subd. (b)*).

**(5) Abatement, Survival, and Revival § 12--Survival--Actions--Elder Abuse Act Claims--Damages for Decedent's Predeath Pain and Suffering--Effect on Wrongful Death Action.**--Under the Elder Abuse Act (*Welf. & Inst. Code, § 15600 et seq.*), where neglect or abuse of an elder or dependent adult is reckless or done with oppression, fraud, or [*1259] malice such that the statutory prerequisites are satisfied, damages for the victim's predeath pain, suffering, or disfigurement are recoverable in a survivor action pursued by the victim's personal representative or successor in interest, notwithstanding the usual prohibition on such recovery under *Code Civ. Proc., § 377.34 (Welf. & Inst. Code, § 15657)*. This statutory rule of law does not affect or expand the type of damages recoverable by a decedent's heir in a wrongful death action in which that plaintiff seeks compensation for his or her own injuries, which are separate and distinct from the decedent's predeath injuries for which compensation is sought in a survivor action. The act, despite its remedial purposes, does not displace or alter fundamental legal and procedural principles generally applicable to civil actions.

**(6) Limitation of Actions § 3--Nature and Purpose.**--"Statute of limitations" is the collective term commonly applied to a great number of acts, or parts of acts, that prescribe the periods beyond which a plaintiff may not bring a cause of action. It has a purpose to protect defendants from the stale claims of dilatory plaintiffs. It has a related purpose to stimulate plaintiffs to assert fresh claims against defendants in a diligent fashion. Inasmuch as it necessarily fixes a definite period of time, it oper-

ates conclusively across the board, and not flexibly on a case-by-case basis. That is to say, a cause of action brought by a plaintiff within the limitations period applicable thereto is not barred, even if, in fact, the former is stale and the latter dilatory; contrariwise, a cause of action brought by a plaintiff outside such period is barred, even if, in fact, the former is fresh and the latter diligent. While the bar of the statute of limitations may be considered a harsh result where there is an otherwise meritorious cause of action, as a matter of policy, this defense operates conclusively across the board. It does so with respect to all causes of action, both those that do not have merit and also those that do. That it may bar meritorious causes of action as well as unmeritorious ones is the price of the orderly and timely processing of litigation--a price that may be high, but one that must nevertheless be paid.

**(7) Limitation of Actions § 53--Commencement of Proceedings--Amendments--Relation Back--Requirements.**--The relation-back doctrine deems a later-filed pleading to have been filed at the time of an earlier complaint which met the applicable limitations period, thus avoiding the bar. In order for the relation-back doctrine to apply, the amended complaint must (1) rest on the same general set of facts, (2) involve the same injury, and (3) refer to the same instrumentality, as the original one. In addition, a new plaintiff cannot be joined after the statute of limitations has run where he or she seeks to enforce an independent right or to impose greater liability upon the defendant. [*1260]

**(8) Abatement, Survival, and Revival § 12--Survival--Actions--Untimely--Relationship to Wrongful Death Claim--Relation Back Doctrine Inapplicable.**--A trial court correctly viewed an untimely survivor cause of action as pleading a different injury than the original cause of action for wrongful death because the survivor cause of action was asserted by a technically different plaintiff asserting an independent and greater liability against the defendants. The new claim was first asserted after the running of the statute of limitations, and because the injuries to be compensated by the two claims were different, the relation-back doctrine did not apply. The survivor cause of action, whether construed as a claim for negligence or for statutory dependent-adult abuse, was therefore barred.

[5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 23; 6 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 1686; 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 891.]

**(9) Abatement, Survival, and Revival § 12--Survival--Actions--Elder Abuse Act Claims--Relation to Wrongful Death Claims--Potential Plaintiffs.**--A survivor claim, by definition, is asserted on behalf of an elder abuse victim, whereas a wrongful death claim is asserted by a decedent's heir, on his or her own behalf. Simply put, a broadly construed standing provision under the Elder Abuse Act (*Welf. & Inst. Code, § 15600 et seq.*) does not transform an ordinary wrongful death claim into a statutory survivor claim for dependent adult abuse--or vice versa. Nor does it change the separate character of the injuries that are compensable through these distinct claims that are brought by different parties. Nor does it alter the application of the statute of limitations or expand the circumstances under which the doctrine of relation back operates to spare a tardy cause of action from that bar. None of the indicators of the expansive scope or character of the act means that a relative or an heir of an elder or dependent adult has an independent claim under the act or that such a person may recover statutory heightened remedies in his or her own wrongful death claim. Under the act, these claims and remedies are afforded only to victims of elder or dependent adult abuse. In the event of the victim's death, the cause of action survives, in which case it is or becomes a survivor action pursued by the personal representative of the estate or the decedent's successor in interest on the decedent's behalf.

**(10) Pleading § 93--Motions--Strike Pleading as a Whole--Improper for Court to Grant.**--It is improper for a court to strike a whole cause of action of a pleading under *Code Civ. Proc., § 436*. While under *§ 436*, a court at any time may, in its discretion, strike portions of a complaint [*1261] that are irrelevant, improper, or not drawn in conformity with the law, matter that is essential to a cause of action should not be struck and it is error to do so. Where a whole cause of action is the proper subject of a pleading challenge, the court should sustain a demurrer to the cause of action rather than grant a motion to strike.

**(11) Negligence § 55--Violation of Statutes, Ordinances, or Safety Orders of Administrative Agencies--Negligence Per Se--Presumption--Elements.**--Negligence per se is an evidentiary doctrine codified at *Evid. Code, § 669*. Under *§ 669, subd. (a)*, the doctrine creates a presumption of negligence if four elements are established: (1) the defendant violated a statute, ordinance, or regulation of a public entity; (2) the violation proximately caused death or injury to person or property; (3) the death or injury resulted from an occurrence the nature of which the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted. These latter two elements are determined by the court as a matter of law.

**(12) Negligence § 56--Violation of Statutes, Ordinances, or Safety Orders of Administrative Agencies--Rebuttable Presumption; Excuse for Violation--Proof.**--If the presumption of negligence is established under *Evid. Code, § 669, subd. (a)*, it may be rebutted under *§ 669, subd. (b)*, by proof that (1) the person violating the statute, ordinance or regulation did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law; or (2) the person violating the statute, ordinance, or regulation was a child and exercised the degree of care ordinarily exercised by persons of his maturity, intelligence, and capacity under similar circumstances, but the presumption may not be rebutted by such proof if the violation occurred in the course of an activity normally engaged in only by adults and requiring adult qualifications (*§ 669, subd. (b)*). Thus, the doctrine of negligence per se does not establish tort liability. Rather, it merely codifies the rule that a presumption of negligence arises from the violation of a statute which was enacted to protect a class of persons of which the plaintiff is a member against the type of harm that the plaintiff suffered as a result of the violation. Even if the four requirements of *§ 669, subd. (a)*, are satisfied, this alone does not entitle a plaintiff to a presumption of negligence in the absence of an underlying negligence action. Accordingly, to apply negligence per se is not to state an independent cause of action. The doctrine does not provide a private right of action for violation of a statute. Instead, it operates to establish a presumption of negligence for which the statute serves the subsidiary function of providing evidence of an element of a [*1262] preexisting common law cause of action. The doctrine of negligence per se is an evidentiary presumption rather than an independent right of action.

**COUNSEL:** The Scott Law Firm, John Houston Scott, Lizabeth N. de Vries; Law Offices of William E. Weiss and William E. Weiss for Plaintiff and and Appellant.

Galloway, Lucchese, Everson & Picchi, David R. Lucchese, Karen A. Sparks; Grunsky, Ebey, Farrar & Howell, Thomas N. Griffin and Leslie J. Karst for Defendants and Respondents.

**JUDGES:** Duffy, J., with Rushing, P. J., and Premo, J., concurring.

**OPINION BY:** Duffy

**OPINION**

[**225] **DUFFY, J.**--This action arises from the untimely death in 2001 of Gilbert Quiroz, a dependent adult who resided at Seventh Avenue Center, a skilled nursing facility located in Santa Cruz. While the underlying facts alleged in the lawsuit are heartrending in their human dimension, from a legal standpoint, the case is a procedural train wreck. Despite the confusion of arguments appellant presents on appeal, the case at core raises one predominant and basic question: whether an untimely pleaded survivor cause of action, through which the decedent's successor in interest seeks damages for the decedent's predeath injuries (and heightened remedies under the Elder Abuse Act), [1] relates back [***2] to a timely filed cause of action for wrongful death through which the decedent's heir seeks only compensation for her own injuries. The trial court concluded that such a claim did not relate back and judgment was ultimately rendered against plaintiff, who now appeals.

   1   See *Welfare and Institutions Code section 15600 et seq.* (Elder Abuse Act or the Act).

Consistently with established law, we hold that the survivor cause of action pleaded a different injury than the wrongful death cause of action. Consequently, the survivor claim does not relate back to the date of the timely filed wrongful death claim and it is therefore barred by the statute of limitations. We further hold that plaintiff is not entitled to heightened remedies available under the Elder Abuse [**226] Act in conjunction with her own wrongful death claim, which she voluntarily dismissed in any event. We accordingly affirm the judgment.

LEGAL OVERVIEW OF CLAIMS

This case wound its way through a procedural labyrinth in the trial [***3] court. For that reason, and in order to place the issues in this case into proper [*1263] context, an overview of the types of claims or causes of action we will be discussing is in order before we delve into the maze.

I. *Wrongful Death*

(1) "At common law, personal tort claims expired when either the victim or the tortfeasor died. [Citation.] Today, a cause of action for wrongful death exists only by virtue of legislative grace. [Citations.] The statutorily created 'wrongful death [cause of] action does not effect a survival of the decedent's cause of action[. Instead,] it "gives to the representative a totally new right of action, on different principles.["] [Citation.]' [Citation.]" ( *Armijo v. Miles* (2005) 127 Cal.App.4th 1405, 1424 [26 Cal. Rptr. 3d 623].) The cause of action "for wrongful death belongs 'not to the decedent [or prospective decedent], but to the persons specified' [by statute]. [Citation.]" ( *Wilson v. John Crane, Inc.* (2000) 81 Cal.App.4th 847, 860-861 [97 Cal. Rptr. 2d 240] *fn. omitted.*) It is a new cause of action that arises on the

death of the decedent and it is vested in the decedent's heirs. ( *Grant v. McAuliffe* (1953) 41 Cal.2d 859, 864 [264 P.2d 944].) [***4]

A cause of action for wrongful death is thus a statutory claim. (*Code Civ. Proc., §§ 377.60-377.62.*) Its purpose is to compensate specified persons--heirs--for the loss of companionship and for other losses suffered as a result of a decedent's death. ( *Jackson v. Fitzgibbons* (2005) 127 Cal.App.4th 329, 335 [25 Cal. Rptr. 3d 478].) Persons with standing to bring a wrongful death claim are enumerated at *Code of Civil Procedure section 377.60*, which provides in pertinent part: "A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf: [¶] (a) The decedent's surviving spouse, domestic partner, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse or domestic partner, who would be entitled to the property of the decedent by intestate succession."

"The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, [***5] consisting of the *pecuniary loss* suffered by the *heirs*. [Citations.]" (5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 891, p. 350.) The wrongful death statute "limits the right of recovery to a class of persons who, because of their relation to the deceased, are presumed to be injured by his [or her] death [citation] and bars claims by persons who are not in the chain of intestate succession. [Citations.]" ( *Nelson v. County of Los Angeles* (2003) 113 Cal.App.4th 783, 789, fn. 6 [6 Cal. Rptr. 3d 650].) [*1264]

(2) Damages awarded to an heir in a wrongful death action are in the nature of compensation for personal injury to the heir. ( *McKinney v. California Portland Cement Co.* (2002) 96 Cal.App.4th 1214, 1231-1232 [117 Cal. Rptr. 2d 849].) "A plaintiff in a wrongful death action is entitled to recover damages for his own pecuniary loss, which may include (1) the loss of the decedent's financial support, services, training and advice, and (2) the pecuniary value of the decedent's society and companionship--but he may *not* recover for [**227] such things as the grief or sorrow attendant upon the death of a loved one, or for his sad emotions, or for the sentimental [***6] value of the loss. [Citations.]" ² ( *Nelson v. County of Los Angeles, supra*, 113 Cal.App.4th at p. 793; see *Code Civ. Proc., § 377.61.*) "The damages recoverable in [wrongful death] are expressly limited to those *not* recoverable in a survival action under *Code of Civil Procedure section 377.34.* [Citations.]" ( *Wilson v. John Crane, Inc., supra*, 81 Cal.App.4th at p. 861; see *Code Civ. Proc., § 377.61.*)

2   *Judicial Council of California Civil Jury Instructions (2003-2004), CACI No. 3921* reflects that a wrongful death plaintiff may recover two categories of damages--economic and noneconomic. Economic damages include: "1. The financial support, if any, that [name of decedent] would have contributed to the family during either the life expectancy that [name of decedent] had before [his/her] death or the life expectancy of [name of plaintiff], whichever is shorter; [¶] 2. The loss of gifts or benefits that [name of plaintiff] would have expected to receive from [name of decedent]; [¶] 3. Funeral and burial expenses; and [¶] 4. The reasonable value of household services that [name of decedent] would have provided." (*CACI No. 3921*, italics omitted.) Noneconomic damages include: "1. The loss of [name of decedent]'s love, companionship, comfort, care, assistance, protection, affection, society, moral support; [and] [¶] [2. The loss of the enjoyment of sexual relations.] [or] [¶] [2. The loss of [name of decedent]'s training and guidance.]" (*Ibid.*, italics omitted.) The instruction also provides that "[i]n determining [name of plaintiff]'s loss, do not consider: [¶] 1. [Name of plaintiff]'s grief, sorrow, or mental anguish; [¶] 2. [Name of decedent]'s pain and suffering; or [¶] 3. The poverty or wealth of [name of plaintiff]." (*Ibid.*, italics omitted.)

[***7] II. *Survivor Claims*

(3) Unlike a cause of action for wrongful death, a survivor cause of action is not a new cause of action that vests in the heirs on the death of the decedent. It is instead a separate and distinct cause of action which belonged to the decedent before death but, by statute, survives that event. ( *Grant v. McAuliffe, supra*, 41 Cal.2d at p. 864.) The survival statutes do not create a cause of action. Rather, "[t]hey merely prevent the abatement of the cause of action of the injured person, and provide for its enforcement by or against the personal representative of the deceased." (*Ibid.*)

A cause of action that survives the death of a person passes to the decedent's successor in interest and is enforceable by the "decedent's personal representative or, if none, by the decedent's successor in interest." (*Code Civ. Proc., § 377.30.*) In the typical survivor action, the damages recoverable by a personal representative or successor in interest on a decedent's cause of [*1265] action are limited by statute to "the loss or damage that the decedent sustained or incurred before death, including any penalties or punitive or [***8] exemplary damages that the decedent would have been entitled to recover had the decedent lived, and *do not* include damages for pain,

Case 3:07-cv-03747-PJH   Document 48-5   Filed 03/26/2008   Page 7 of 20

Page 6
140 Cal. App. 4th 1256, *; 45 Cal. Rptr. 3d 222, **;
2006 Cal. App. LEXIS 984, ***; 2006 Cal. Daily Op. Service 5880

suffering, or disfigurement." (*Code Civ. Proc., § 377.34*, italics added.)

**(4)** But there is at least one exception to the rule that damages for the decedent's predeath pain and suffering are not recoverable in a survivor action. Such damages are expressly recoverable in a survivor action under the Elder Abuse Act if certain conditions are met. Specifically, *Welfare and Institutions Code section 15657* provides for heightened remedies, including recovery for the decedent's predeath pain, suffering, and disfigurement, to a successor in interest to a decedent's cause of action "[w]here it is proven by clear and convincing evidence that a defendant is liable for physical abuse as defined in *Section 15610.63*, or neglect as defined in *Section 15610.57*, and that the defendant has been guilty of recklessness, oppression, [**228] fraud, or malice in the commission of this abuse ... in addition to all other remedies provided by law." (See *Welf. & Inst. Code., § 15657, subds. (a) & (b)*.)

The ability of the [***9] decedent's successor in interest to recover damages for the decedent's predeath pain, suffering, or disfigurement under this section specifically trumps the general prohibition on such recovery provided at *Code of Civil Procedure section 377.34*. (*Welf. & Inst. Code, § 15657, subd. (b)*.) But it is also expressly subject to the dollar amount limitation of *Civil Code section 3333.2*--a maximum of $ 250,000 for noneconomic losses in an action for injury against a health care provider based on professional negligence. (*Id., § 3333.2, subd. (b)*.)

**(5)** Thus, under the Elder Abuse Act, where neglect or abuse of an elder or dependent adult is reckless or done with oppression, fraud, or malice such that the statutory prerequisites are satisfied, damages for the victim's predeath pain, suffering, or disfigurement are recoverable *in a survivor action* pursued by the victim's personal representative or successor in interest, notwithstanding the usual prohibition on such recovery under *Code of Civil Procedure section 377.34*. (*Welf. & Inst. Code, § 15657*.) This statutory [***10] rule of law does not affect or expand the type of damages recoverable by a decedent's heir in a wrongful death action in which that plaintiff seeks compensation *for his or her own injuries,* which are separate and distinct from the decedent's predeath injuries for which compensation is sought in a survivor action. Indeed, appellant's contentions to the contrary, no section of the Elder Abuse Act, or any part of its legislative history, suggests otherwise. [*1266]

STATEMENT OF THE CASE

With that backdrop in mind, we now turn to the convoluted procedural history of the instant case.

I. *The Pleadings*[3]

[3] We take the operative facts from the allegations of the pleadings. We do so because, as shall be apparent, what happened below distills down to the granting of a motion for judgment on the pleadings on the survivor cause of action, the striking of certain other allegations pleaded under the Elder Abuse Act that related to that cause of action, and plaintiff's voluntary dismissal of her remaining cause of action for wrongful death.

[***11] The original complaint in this case was timely filed in propria persona on April 5, 2002, by Manuel Quiroz and Maria G. Quiroz.[4] It alleged that Manuel Quiroz was the brother and conservator of Gilbert Quiroz, who died on April 6, 2001, while a resident at Seventh Avenue Center, "a business providing housing, skilled nursing services, medical care and prescription medication, among other things, to mentally handicapped patients." Maria G. Quiroz was alleged to be the mother of Gilbert Quiroz. The named defendants included Seventh Avenue Center; Ann M. Butler and Peggy A. Butler, "owners" of Seventh Avenue Center; and Mohammed S. Mollah, [**229] M.D. and S.T. Mitchell, M.D., "employees" of the facility.

[4] The complaint was timely filed whether the applicable statute was former Code of Civil Procedure section 340, subdivision (3), which was previously applicable to personal injury and wrongful death actions (see now *Code Civ. Proc., § 335.1*, eff. Jan. 1, 2003, providing for a two-year limitations period to such actions) or *Code of Civil Procedure section 340.5*, which is applicable to professional negligence actions against health care providers. We need not decide which section applied here because either statute would have provided a one-year limitations period on the facts of this case. (See, e.g., *Benun v. Superior Court (2004) 123 Cal.App.4th 113, 126 [20 Cal. Rptr. 3d 26]* [concluding that personal injury rather than medical malpractice limitations period applies to actions for reckless neglect under the Elder Abuse Act].)

[***12] In a single cause of action, the complaint alleged that Gilbert Quiroz died while in the "medical and psychological care" of defendants, each of whom "negligently, recklessly, unlawfully and carelessly treated Gilbert Quiroz so as to proximately cause [his] wrongful death ..." by, among other things, overmedicating him. Plaintiffs Manuel Quiroz and Maria G. Quiroz further alleged that as a proximate result of defendants' negligence, *they* "were hurt and injured in their health, strength, and activity, sustaining injury to *their* nervous

system[s] and person[s], all of which said injuries have caused and continue to cause *plaintiffs* great mental and physical nervous pain and suffering." (Italics added.)

On information and belief, plaintiffs further alleged that such "injuries will result in some permanent disability to [them], all to *their* general damage. ..." (Italics added.) Plaintiffs finally alleged that *they* were required to [*1267] obtain medical treatment for *their* ongoing injuries and that they also "lost the society, comfort and enjoyment of Gilbert Quiroz and have thereby incurred great pain and suffering." [***13] The complaint prayed for general damages, special damages according to proof, costs of suit, prejudgment interest, and "such other and further relief as the Court may deem just and proper." It did not seek punitive damages or attorney fees. Most notably, while the pleading alleged that defendants had proximately caused the "wrongful death" of Gilbert Quiroz, an element of plaintiff's wrongful death claim, it did not allege damages for any injury to him or seek any relief on his behalf. Therefore, according to the pleaded allegations, the cause of action was one for wrongful death only, which plaintiffs asserted strictly on their own behalf. [5]

> 5   We accordingly reject appellant's contention on appeal that the original complaint pleaded both wrongful death and survivor claims.

Defendants Seventh Avenue Center, [6] Ann M. Butler, and Peggy A. Butler demurred to the complaint on the grounds that "Manuel Quiroz [was] not a proper plaintiff" statutorily entitled to pursue a wrongful death claim and that [***14] the complaint further failed to state facts sufficient to constitute a cause of action for negligent infliction of emotional distress. This latter ground was based on the fact that plaintiffs were not "direct" victims and had not stated a claim for emotional distress under a bystander theory of liability. In response to the demurrer, on May 29, 2002, Maria G. Quiroz, then through counsel and as the sole plaintiff, filed a first amended complaint, the operative pleading in this appeal.

> 6   The name of this defendant also appears in the record as "7th Avenue Center, LLC" but for ease of reference we will use the name as it first appeared in the complaint.

The first amended complaint named the same defendants and alleged Maria G. Quiroz's status as plaintiff in two distinct capacities--individually, on her own behalf, and as heir and successor in interest to the decedent, Gilbert Quiroz, under *Code of Civil Procedure section 377.20* and *Probate Code section 6402.* [***15] [7] The pleading alleged that Maria G. Quiroz had "executed and filed a declaration under penalty of perjury required by ... *Code of Civil Procedure [section] 377.32.*" The separate declaration [**230] stated that Maria G. Quiroz is the mother of Gilbert Quiroz, and his successor in interest under *Code of Civil Procedure section 377.11*, Gilbert Quiroz having died leaving no spouse or issue. Gilbert Quiroz was alleged to have been "a patient suffering a mental illness [that] render[ed] him gravely disabled," which qualified him as a dependent adult as defined under the Elder Abuse Act and entitled him to the protections and remedies afforded thereunder. (*Welf. & Inst. Code, § 15600 et seq.*) He was further alleged to have been an [*1268] "L.P.S. Conservatee," [8] who was involuntarily held at Seventh Avenue Center, a "locked psychiatric hospital providing housing, skilled nursing services, medical care and prescription medication, among other things, to mentally handicapped and mentally ill patients including patients for whom an L.P.S. Conservator had been appointed." [***16]

> 7   These allegations demonstrated that Maria G. Quiroz had standing in her representative capacity to assert the survivor action on behalf of the decedent and also that, as an heir, she had standing in her own right to assert a claim for wrongful death.

> 8   "L.P.S." refers to the Lanterman-Petris-Short Act, codified at *Welfare and Institutions Code section 5000 et seq.* This act provides for, among other things, the prompt evaluation and treatment of mentally disordered persons, developmentally disabled persons, and persons impaired by chronic alcoholism, while protecting public safety and safeguarding individual rights through judicial review. ( *In re Qawi (2004) 32 Cal.4th 1, 16-21 [7 Cal. Rptr. 3d 780, 81 P.3d 224]*.) The act includes civil commitment provisions that provide for incrementally implemented detentions and involuntary treatment of persons who are dangerous or gravely disabled due to a mental disorder in accordance with the legislative purpose of preventing inappropriate, indefinite commitments. (*Ibid.*)

[***17] Defendants were alleged to have been responsible for protecting Gilbert Quiroz from "self harm" and for providing him with proper medications and for monitoring his ingestion of those medications. Defendants were also alleged to have "failed in their duties and responsibility to [Gilbert Quiroz] by negligently and recklessly prescribing, monitoring, [and] recording[] the medications administered ... [and] by negligently and recklessly failing to supervise the ingestion of medications and negligently and recklessly failing to follow the orders of physicians with regard to the monitoring of the

Case 3:07-cv-03747-PJH    Document 48-5    Filed 03/26/2008    Page 9 of 20

Page 8
140 Cal. App. 4th 1256, *; 45 Cal. Rptr. 3d 222, **;
2006 Cal. App. LEXIS 984, ***; 2006 Cal. Daily Op. Service 5880

medications. Said conduct fell below the standard of care of health care providers similarly situated."

After the general allegations, the amended pleading stated two separate and distinct causes of action--one entitled "(Negligence) [*C.C.P. section 377.2 et seq*[.]]" [9] and one entitled "(Wrongful Death Action) *C.C.P. section 377.60.*"[10] The negligence cause of action restated the capacity of plaintiff Maria G. Quiroz solely as successor in interest to the decedent, Gilbert Quiroz. It further stated that as a result of defendants' acts and [***18] omissions, "*the decedent* experienced pain and suffering ... ." (Italics added.) No personal injury to Maria G. Quiroz herself was alleged in the negligence cause of action. By the nature of its allegations, then, this claim was a purported survivor cause of action brought by plaintiff on behalf of the decedent, Gilbert Quiroz, for recovery for *his* injuries.

> 9 Since the Code of Civil Procedure does not contain a section numbered 377.2, we infer that the section intended to be referenced was *377.20*, which provides for survival of a cause of action for or against a person who has died, subject to the applicable limitations period.

> 10 This section enumerates the class of persons who have standing to bring a cause of action for the death of a person caused by the wrongful act or neglect of another. See discussion, *ante*, at pages 1262 to 1264.

By contrast, the wrongful death cause of action pleaded that "[a]s a legal result of the conduct of defendants and of the death [**231] of Gilbert Quiroz, [***19] [*1269] [*p*]*laintiff* has been deprived of the love, companionship, comfort, affection, society, solace and moral support of [d]ecedent, and has incurred funeral and burial expenses." (Italics added.) Thus, distinct from the survivor claim, this cause of action was a purported wrongful death claim in which plaintiff, as the decedent's heir, sought recovery only for *her own* injuries.

Accordingly, the specific allegations of the two causes of action clearly distinguished the negligence claim as a pure survivor action brought on behalf of Gilbert Quiroz, in which Maria G. Quiroz's capacity was representative only, from the wrongful death cause of action, in which Maria G. Quiroz sought recovery on her own behalf and for her own injuries. The wrongful death cause of action was a mere restatement of the single cause of action that had been timely asserted by Maria G. Quiroz on her own behalf in the original complaint.[11]

> 11 That the original complaint also (improperly) named Manuel Quiroz as a plaintiff does not mean that it stated a survivor cause of action, even under a liberal construction of the pleading. While the complaint identified Manuel Quiroz as the brother and conservator of the decedent, Gilbert Quiroz, it still did not allege that Manuel Quiroz was acting as in a representative capacity *for* Gilbert or on *his* behalf. Furthermore, at the time the complaint was filed, Manuel Quiroz was no longer the conservator for his brother, Gilbert, as a conservatorship terminates as a matter of law upon the death of the conservatee. (*Prob. Code, § 1860, subd. (a)*; Cal. Rules of Court, Prob. Rules, rule 7.1052(b).) More fundamentally, the complaint did not allege any damages to Gilbert Quiroz, pleading instead only compensable injury to the two plaintiffs themselves. A liberal construction of the pleading thus suggests that Manuel Quiroz was attempting to assert a wrongful death claim in his own right, even though he lacked standing to do so, rather than attempting to plead a survivor claim on behalf of the decedent.

[***20] In the prayer of the first amended complaint, plaintiff separately requested special damages and "general damages pursuant to *Welfare [and] Institutions Code Section 15657[, subdivision] (b)*"[12] on the survivor cause of action for negligence. Then, on the wrongful death cause of action, plaintiff requested both general and special damages. Finally, in a combined request for relief on both causes of action, plaintiff requested "[a]ttorney[] fees pursuant to *Welfare [and] Institutions Code section 15657[, sub-division] (a)*; [13] and for such other relief as the court deems proper." Thus, whether she was entitled to it or not, plaintiff prayed for an award of attorney fees under the Elder Abuse Act on her own wrongful death cause of action.

> 12 This is the statutory subdivision of the Elder Abuse Act that enables a successor to a decedent's cause of action, on certain conditions, to recover damages for the decedent's predeath pain, suffering, or disfigurement.

> 13 This subdivision provides that a plaintiff under the Elder Abuse Act, on certain conditions, may recover attorney fees and costs as part of the available heightened remedies.

[***21] [*1270]

**II.** *Defendants' Motion for Summary Adjudication of the Survivor Cause of Action*

Shortly before trial, defendants Seventh Avenue Center, Ann M. Butler, and Peggy A. Butler moved for summary adjudication of the survivor cause of action under *Code of Civil Procedure section 437c*. The motion treated the cause of action as having been brought under

Case 3:07-cv-03747-PJH    Document 48-5    Filed 03/26/2008    Page 10 of 20

Page 9
140 Cal. App. 4th 1256, *; 45 Cal. Rptr. 3d 222, **;
2006 Cal. App. LEXIS 984, ***; 2006 Cal. Daily Op. Service 5880

the Elder Abuse Act (reckless neglect as set out at *Welf. & Inst. Code, §§ 15610.57 & 15657*) and as seeking heightened remedies thereunder. The grounds for the motion were twofold: (1) The bar of the one-year statute of limitations was a complete defense [**232] to the cause of action; [14] and (2) One or more elements of the claim could not be established, specifically the elements of defendants' recklessness, oppression, or malice as a predicate for heightened remedies under the Elder Abuse Act and as a basis for punitive damages under *Civil Code section 3294*.

> 14   The statute of limitations that was asserted to apply was the one-year bar under *Code of Civil Procedure section 340.5*, which provides in pertinent part that "[i]n an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." The statute of limitations is an affirmative defense that must be specifically raised or is waived. (5 Witkin, Cal. Procedure, *supra*, Pleading, § 1043, pp. 491-492.) The record on appeal does not contain defendants' answer but since appellant has not asserted otherwise, we assume the answer properly raised this defense.

[***22] On the subject of the statute of limitations, plaintiff argued in opposition to the motion that the then recently enacted *Code of Civil Procedure section 335.1*, which provides for a two-year--instead of the previously applicable one-year--statute of limitations for "[a]n action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another," retroactively applied to the survivor cause of action first pleaded by the amended complaint some 13 months after the death of Gilbert Quiroz. [15] She also contended that the survivor cause of action related back to the date of her timely filed wrongful death claim because both causes of action were "based on the same underlying facts." [16] She finally argued that on the merits, [*1271] there were triable issues of material fact on the question of defendants' recklessness under the Elder Abuse Act that precluded summary adjudication of the cause of action.

> 15   But new *Code of Civil Procedure section 335.1* would not have applied retroactively to save a personal injury claim that was already barred by the previously applicable personal injury statute (Code Civ. Proc., former § 340, subd. (3)) at the time of the enactment of *section 335.1* in 2002. (See *Code Civ. Proc., § 335.1*, added by Stats. 2002, ch. 448, § 3; *Andonagui v. May Dept. Stores Co.* (2005) 128 Cal.App.4th 435, 439-441 [27 Cal. Rptr. 3d 145]; *Krupnick v. Duke Energy Morro Bay, L.L.C.* (2004) 115 Cal.App.4th 1026, 1028-1030 [9 Cal. Rptr. 3d 767].) Appellant forgoes this contention on appeal in any event.

[***23]
> 16   In her response to defendants' separate statement of undisputed facts, Maria G. Quiroz acknowledged as "undisputed" that "[i]n the first complaint no survival [sic] action on behalf of Gilbert Quiroz (the deceased) was pled." She asserts on appeal that this concession was a "mistake." Whether this was a mistake or not is irrelevant because the determination as to what claim was pleaded by the initial complaint is not a statement of material fact on which summary adjudication, or anything else, turned. It is rather a legal conclusion properly reached based on an examination of the four corners of the pleading.

Thus, the parties treated the operative pleading as having stated a survivor claim on behalf of Gilbert Quiroz for neglect under the Elder Abuse Act, and they considered this claim to be the target of defendants' motion for summary adjudication. Despite this consensus as reflected in their motion papers, at the hearing on the motion, the court stated its view that the first amended complaint did not actually plead a cause of action under the Elder Abuse Act, which the court [***24] considered to have been invoked only by the remedies sought in the general allegations and in the prayer for relief, i.e., there was no separately stated cause of action specifically alleging only dependent adult abuse. For this reason, the court determined the "elder abuse claim" to be not summarily "adjudicable" as, in the court's view, there [**233] was not a whole cause of action that could properly be the subject of this sort of disposition.

But having been persuaded that the statute of limitations defense to the survivor cause of action was meritorious, and in lieu of granting summary adjudication of this claim, the court, on its own, treated the pending matter as a motion to strike. Regarding the motion as such, the court struck "the allegations dealing with the attorney's fees, the prayer for attorney's fees, and the allegations that deal with that, as it relates to the Elder Abuse Act," concluding that these allegations, though falling short of stating a complete cause of action, did not relate back and were thus barred by the statute of limitations. [17]

> 17   The court's concluding remarks were: "I am finding that a cause of action for elder abuse has not been plead[ed], and if it has been plead[ed],

then it's inappropriate on the two bases that I stated: Statute of limitations, and the [fact] that it has not been--it does not apply to the health-care provider as provided under the Welfare [and] Institutions Code." This second basis was later withdrawn by the court on reconsideration and it is not relevant to our analysis.

[***25] The court's written order filed after the hearing stated: "Defendants' motion for summary adjudication is considered a motion to strike. A cause of action for elder abuse and dependent adult abuse has not been [pleaded]. Allegations that relate to the Elder Abuse and Dependent Adult Civil Protection Act do not relate back to the original complaint and are barred by the statute of limitations. The damages [pleaded] as to these allegations do not relate to a health care provider pursuant to the *Welfare and Institutions Code section[] 15600 et seq.* [¶] *It is hereby ordered* that the allegations involving the Elder Abuse and Dependent Adult Civil Protection Act are barred by the statute of limitations and are stricken. Plaintiff's prayer for [*1272] attorney[] fees is stricken. Plaintiff's prayer for damages pursuant to the Elder Abuse and Dependent Adult Abuse Civil Protection Act and *Welfare and Institutions Code section[] 15657[, subdivisions] (a)* and *(b)* [is] stricken." (Some capitalization omitted.)

Thus, after the ruling on the motion, the survivor cause of action brought on behalf of Gilbert Quiroz remained, even though [***26] it had been the target of defendants' motion based on the statute of limitations defense. But, consistent with its label, the claim now sounded only in common law negligence because the general allegations and prayer that had referred to the Elder Abuse Act had been stricken. The wrongful death cause of action brought by Maria G. Quiroz on her own behalf, which had not been the subject of defendants' motion, also remained. But the effect of the court's sua sponte action was that the general allegations and prayer for relief under the Elder Abuse Act, which had been pleaded relative to both causes of action, were stricken.

Within 10 days from entry of the order, Maria G. Quiroz filed a motion for reconsideration under *Code of Civil Procedure section 1008*. The motion sought leave to amend the complaint in the alternative. The motion was set to be heard approximately three weeks *after* the scheduled trial date.

At trial, with the motion for reconsideration pending before a different judge than the assigned trial judge, plaintiff requested a continuance of trial. That request was denied. As a result, plaintiff moved "to dismiss her medical malpractice [***27] claims," which, she posited, would "only leave the dependent abuse claims to the extent they [might] survive the motion to reconsider."

Plaintiff's voluntary dismissal of her [**234] "malpractice" claims, whatever that was referring to, was expressly without prejudice. But her counsel expressed his intention not "to pursue a malpractice claim further in this case" or to "try to revive malpractice claims in the future." Counsel further expressed his intention to "revive the dependent abuse and neglect cause of action and proceed on that theory." When pressed as to whether he was dismissing the "negligent wrongful death cause of action," plaintiff's counsel said, "I'm dismissing the part of the wrongful death cause of action that's based on negligence. To the extent there's a wrongful death claim based on dependent abuse and neglect, I'm not." [18] The court then said, "That's been stricken and unless it's revived, it's over." [19]

 18   This was apparently an improper attempt by plaintiff's counsel to split her single cause of action for wrongful death into two separate claims. Moreover, as a matter of law, her wrongful death cause of action was in no part "based on" the Elder Abuse Act such that she herself was entitled to its heightened remedies as compensation for *her own* injuries.

[***28]
 19   These events left a very confusing state of affairs. Just what claim or claims plaintiff's counsel was attempting to dismiss is entirely unclear. It is apparent from our review of the record that at the time of plaintiff's motion to dismiss, there were still *two* causes of action pending--the survivor claim for negligence and plaintiff's wrongful death claim asserted on her own behalf--even though the court had already stricken the Elder Abuse Act allegations and prayer for relief. But we cannot tell whether the court's "dismissal" at plaintiff's request was intended to encompass only one of these claims, and if so which one, or whether the dismissal was of both remaining claims. Neither of the two causes of action was expressly entitled "malpractice"--the type of claim to which plaintiff's counsel referred when he moved for dismissal. But the survivor cause of action for "negligence" alleged defendants' breach of a duty of care regarding "the treatment and protection of their patient," which sounds much like a claim for medical malpractice. Yet, the wrongful death claim merely incorporated these same allegations and pleaded injury to Maria G. Quiroz as a result. This suggests that both remaining claims, each sounding in negligence, may have been the subject of plaintiff's request for dismissal of the "malpractice" claims. The whole colloquy surrounding the "dismissal" also suggests that plaintiff's counsel did not un-

Case 3:07-cv-03747-PJH    Document 48-5    Filed 03/26/2008    Page 12 of 20

Page 11
140 Cal. App. 4th 1256, *; 45 Cal. Rptr. 3d 222, **;
2006 Cal. App. LEXIS 984, ***; 2006 Cal. Daily Op. Service 5880

derstand just what causes of action had actually been alleged, or what allegations had actually been stricken by the prior order, or what actual cause(s) of action was the focus of his own client's motion to dismiss.
[*1273]

[***29] The parties and the court thereafter seemed to proceed on the basis that after the "dismissal" of the "malpractice" claims, all causes of action had indeed been disposed of, and that all that remained to be addressed in the trial court was plaintiff's motion for reconsideration of the court's prior order. [20] On reconsideration, as she had done in opposition to the initial motion for summary adjudication, she contended that the survivor claim asserted in the first amended complaint on behalf of Gilbert Quiroz, her "Elder & Dependent Adult Abuse claim," related back to the timely filed wrongful death action that she had originally brought on her own behalf. On her alternative motion for leave to amend her complaint, plaintiff submitted a proposed second amended complaint that stated two separate causes of action: one for "Dependent Adult Abuse/Reckless Neglect," which was a survivor cause of action under the Elder Abuse Act asserted on behalf of Gilbert Quiroz, and one for wrongful death asserted on behalf of plaintiff [**235] herself. Finally, in a key admission, plaintiff conceded that if "the relation back doctrine does not apply to her dependent adult abuse claim, then the statute [***30] of limitations defense is a bar to recovery."

> 20 As we have said, this motion sought reconsideration of a written order that did *not* strike an entire pleaded claim or cause of action but instead struck only the references to the Elder Abuse Act in the first amended complaint's general allegations and prayer for relief. Plaintiff went forward with the motion for reconsideration on the faulty premise that the court actually had previously struck an entire cause of action, which she characterized as her "Elder & Dependent Adult Abuse claim."

In opposing the motion for reconsideration, defendants also proceeded as if the court had previously struck the entire survivor claim, instead of just the Elder Abuse Act allegations and prayer. They maintained that the survivor claim, which they, too, referenced as a statutory claim for dependent adult [*1274] abuse, was barred by the statute of limitations and that this defect was incapable of being cured by further amendment.

At the hearing on the motion for reconsideration, [***31] the court said that the stricken "elder abuse claim" had been "part of" the survivor cause of action for negligence that had first been pleaded after the running of the statute of limitations. For various reasons, the court stated its tentative decision to grant the motion for reconsideration, but upon reconsideration, to conclude that because the "elder abuse claim" had asserted a different injury than the wrongful death cause of action timely brought by Maria G. Quiroz on her own behalf, it did not relate back and was barred by the statute of limitations. [21]

> 21 Even though the court's prior order had not struck the survivor cause of action labeled "negligence," this same reasoning, if correct, would apply to bar that claim as well based on the statute of limitations defense. Like a survivor cause of action arising under the Elder Abuse Act, a survivor claim sounding in negligence would not relate back to the wrongful death claim because the claims assert different injuries to different persons.

Consistently [***32] with its tentative decision, the court's later written order granted reconsideration of the prior order. However, it "affirmed" the striking of the entire "dependent adult claim" since that claim did not relate back to the timely filed wrongful death claim, and it was, therefore, barred by the statute of limitations. As we have noted, the prior order had not struck an entire claim--indeed, the absence of a discretely pleaded statutory dependent adult abuse claim was the reason the court gave for denying summary adjudication of this "claim." Thus, the order on reconsideration in effect not only affirmed the prior order to the extent it had struck the Elder Abuse Act allegations and prayer; it also went beyond that order by, *in addition*, striking what it described as the entire "dependent adult claim." We understand this stricken "claim" to refer to the *entire* survivor cause of action of the first amended complaint--labeled "negligence"--brought by plaintiff on behalf of the [*1275] decedent, Gilbert Quiroz.

Judgment was later entered in favor of Seventh Avenue Center, Ann M. Butler, Peggy A. Butler, and Mohammed S. Mollah, M.D., [22] and against Maria G. Quiroz, both as an individual [***33] and as successor in interest to the decedent, Gilbert Quiroz. The judgment stated that the "medical malpractice claims against defendants [had] been dismissed by the plaintiff on June 1, 2004, [that] all dependent adult claims [had] been stricken by the court in its Order of May 18, 2004, said Order [having been] subsequently affirmed upon reconsideration on June 22, 2004, and [that] there [were] no further claims pending." [23]

> 22 Although this defendant had not joined in the motion for summary adjudication based on the statute of limitations defense, he was a beneficiary of the court's rulings on the pleadings and

plaintiff's voluntary dismissal of her wrongful death claim. Hence, judgment was entered in his favor as well, and he is a party to this appeal. Defendant S.T. Mitchell, M.D., apparently exited the case by separate judgment and he is not a party.

23    Accordingly, for purposes of our appellate review, we will consider the entire survivor cause of action and all Elder Abuse Act allegations and requests for relief to have been stricken by the court. We will also consider the remaining wrongful death cause of action, in its entirety, to have been voluntarily dismissed, with prejudice, by plaintiff. The "with prejudice" part comes as a result of supplemental briefing, which we requested from plaintiff/appellant in order to clarify the status of her voluntary dismissal below. This was out of our concern about appealability and the potential violation of the one final judgment rule if any aspect of plaintiff's wrongful death cause of action remained in some sense outstanding in the trial court based on plaintiff's request for dismissal of only "part" of the cause of action. In her supplemental briefing, plaintiff "unequivocally waive[d] her right to a trial on her wrongful death cause of action," which renders her voluntary dismissal of this entire claim with prejudice and clarifies our appellate jurisdiction. ( *Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 308-309 [63 Cal. Rptr. 2d 74, 935 P.2d 781]; *Don Jose's Restaurant, Inc. v. Truck Ins. Exchange* (1997) 53 Cal.App.4th 115, 118-119 [61 Cal. Rptr. 2d 370].)

[**236]

[***34]    This appeal by plaintiff, in both her capacities, followed. [24]

24    In keeping with the procedural irregularities in this case, the appeal did not exactly "follow." The hearing on the motion for reconsideration took place on June 22, 2004. Apparently, there was a delay in the court's entry of a written order after the hearing. On December 20, 2004, before any judgment had been rendered or entered in the action, and "[o]ut of an abundance of caution," plaintiff filed a notice of appeal. The notice stated that it was timely under *rule 2(a)(3) of the California Rules of Court* because it was filed "within 180 days of oral argument ... when the Honorable Robert B. [Atack] adopted his tentative ruling" on plaintiff's motion for reconsideration of the court's prior order--also a nonappealable order. Thus, the notice referenced only a nonappealable ruling--the order on reconsideration of a prior nonappealable ruling. The notice of appeal further stated that no judgment had been entered, and it did not even purport to appeal from a *judgment*, which is the only appealable matter at play here. Since there had been no appealable order or judgment entered at the time the notice of appeal was filed, it was filed prematurely and at a time when no deadline on the filing was even running.

After the notice of appeal was filed, on December 22, 2004, the nonappealable order granting reconsideration was entered. Then, on January 21, 2005, the judgment was finally entered. Thereafter, appellant filed in this court a motion for an order considering the notice of appeal filed in December 2004 as a notice of appeal from the judgment entered in January 2005. Construing the notice liberally--and indulging appellant's premature filing--we granted the motion. ( *In re Marriage of Battenburg* (1994) 28 Cal.App.4th 1338, 1341 [33 Cal. Rptr. 2d 871] [notice of appeal filed before rendition of judgment but after court's announcement of intended ruling may be validated by appellate court in its discretion]; *Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 20 [23 Cal. Rptr. 3d 490, 104 P.3d 844]; *Luz v. Lopes* (1960) 55 Cal.2d 54, 59 [10 Cal. Rptr. 161, 358 P.2d 289] [although party must identify judgment or order being appealed from, notice of appeal must be liberally construed so as to protect right of appeal if it is reasonably clear what appellant was trying to appeal from and respondent could not possibly have been misled or prejudiced].)

[***35] [*1276]

DISCUSSION

I. *Issues on Appeal*

Fundamentally, at issue in this appeal is whether the survivor action first brought by plaintiff on behalf of the decedent, Gilbert Quiroz, after the running of the statute of limitations is time-barred. This issue turns on whether the cause of action relates back to the timely filed wrongful death cause of action filed by plaintiff on her own behalf.

Appellant further contends that she, on her own behalf, is entitled to heightened remedies under the Elder Abuse Act in connection with her wrongful death claim and that the trial court's striking of these allegations deprived her of these remedies, and of the ability to pursue the claim and the remedies based on a theory of negli-

gence [**237] per se for defendants' alleged violations of the Act.

We address each of these issues in turn.

II. *The Survivor Action Is Barred by the Statute of Limitations*

We have concluded that what happened, in essence, to the entire survivor cause of action first pleaded by the first amended complaint was that the trial court ultimately struck it as being barred by the statute of limitations. In effect, this was the equivalent of the court sustaining a [***36] demurrer without leave to amend or granting to defendants judgment on the pleadings relative to this cause of action. [25] In either case, the reviewing court assumes the truth [*1277] of all properly pleaded allegations (but not contentions, deductions, or conclusions of fact or law) and gives them [**238] a liberal construction. ( *Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 515-516 [101 Cal. Rptr. 2d 470, 12 P.3d 720].) An appeal from a judgment on the pleadings generally presents a predominantly legal issue, requiring the appellate court to determine, de novo and as a matter of law, whether the complaint states a cause of action. (*Ibid.*; *Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 602 [98 Cal. Rptr. 2d 277].)

> 25  It is also the equivalent of granting summary adjudication on the cause of action, which is precisely what defendants moved for and, for the reasons stated in this opinion, what the trial court should have granted in the first instance. A motion for summary judgment necessarily tests the pleadings, and where there is a failure to state a cause of action, or, as here, the action is barred on the face of the complaint, the motion is tantamount to a motion for judgment on the pleadings. ( *Fenn v. Sherriff* (2003) 109 Cal.App.4th 1466, 1491 [1 Cal. Rptr. 3d 185].) The trial court declined to grant summary adjudication in this case because it viewed the first amended complaint as failing to state a survivor cause of action for dependent adult abuse, the Elder Abuse Act having been invoked only in the general allegations and prayer for relief and not in the cause of action itself. In other words, under *Code of Civil Procedure section 437c, subdivision (f)(1)*, the court initially perceived that it could not grant summary adjudication of a claim that was not pleaded as an independent "cause of action." Ultimately, the court struck the entire claim anyway, disregarding that previous concern.

For pleading purposes, whether a complaint in fact asserts one or more discrete causes of action depends on whether it alleges an invasion of one or more primary rights. ( *Hindin v. Rust* (2004) 118 Cal.App.4th 1247, 1255-1258 [13 Cal. Rptr. 3d 668].) "The primary right theory is a theory of code pleading that has long been followed in California. It provides that a 'cause of action' [comprises] a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty. [Citation.] The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action. [Citation.]" ( *Crowley v. Katleman* (1994) 8 Cal.4th 666, 681 [34 Cal. Rptr. 2d 386, 881 P.2d 1083].) "As far as its content is concerned, the primary right is simply the plaintiff's right to be free from the particular injury suffered. [Citation.] *It must therefore be distinguished from the legal theory on which liability for that injury is premised.*" (*Ibid.*, italics added.) "The manner in which a plaintiff elects to organize his or her claims within the body of the complaint is irrelevant to determining the number of causes of action alleged under the primary right theory." ( *Hindin v. Rust, supra, 118 Cal.App.4th at p. 1257*.) The violation of a single primary right still gives rise to only one "cause of action," even if a plaintiff seeks various forms or theories of relief. ( *Jenkins v. Pope* (1990) 217 Cal. App. 3d 1292, 1300, fn. 3 [266 Cal. Rptr. 557].)

Here, the first amended complaint alleged on behalf of the decedent the invasion of a single primary right--to be free from the alleged harm inflicted by defendants. And in the primary right sense, this constituted one single survivor cause of action that both sides understood was the target of the motion for summary adjudication based on the statute of limitations, regardless of the label on the cause of action or the heightened remedies prayed for under the Elder Abuse Act. Accordingly, despite the trial court's concerns, it was not precluded from granting summary adjudication of the "cause of action" in the first place based solely on the manner in which plaintiff had elected to plead it. That the cause of action itself was labeled "negligence" and not "dependent adult abuse" should have made no difference, as there was a violation of but a single primary right, though various theories of relief, being asserted. As we have said, it was the *entire* survivor cause of action, no matter the theory of liability or label on the claim, which was time-barred.

[***37] It is not disputed here that the original complaint, which contained one cause of action for

wrongful death, was timely filed within one year from the decedent's date of death. [26] It is likewise not disputed that the first amended complaint, which first asserted a survivor cause of action--whether sounding in negligence or elder abuse--was filed after the then-applicable one-year limitations period. [27] It follows that the survivor action is consequently barred by the statute of limitations, as a matter of law, unless the claim "relates back" to the original complaint's filing date.

> 26   See footnote 4, *ante*. As a usual matter, the date of accrual of a cause of action for wrongful death is the date of death. ( *Larcher v. Wanless* (1976) 18 Cal.3d 646, 656-657 [135 Cal. Rptr. 75, 557 P.2d 507].)
>
> 27   See footnote 4, *ante*.

(6) " 'Statute of limitations' is the 'collective term ... commonly applied to a great number of acts,' or parts of acts, that 'prescribe the periods beyond which' a plaintiff may [***38] not bring a cause of action. [Citations.] It has as a [*1278] purpose to protect defendants from the stale claims of dilatory plaintiffs. [Citations.] It has as a related purpose to stimulate plaintiffs to assert fresh claims against defendants in a diligent fashion. [Citations.] Inasmuch as it 'necessarily fix[es]' a 'definite period[] of time' [citation], it operates conclusively across the board, and not flexibly on a case-by-case basis. [Citations.] That is to say, a cause of action brought by a plaintiff within the limitations period applicable thereto is not barred, even if, in fact, the former is stale and the latter dilatory; contrariwise, a cause of action brought by a plaintiff outside such period is barred, even if, in fact, the former is fresh and the latter diligent." ( *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 395 [87 Cal. Rptr. 2d 453, 981 P.2d 79].)

(7) The relation-back doctrine deems a later-filed pleading to have been filed at the time of an earlier complaint which met the applicable limitations period, thus avoiding the bar. In order for the relation-back doctrine to apply, "the amended complaint must (1) rest on the *same general set of facts*, (2) involve the *same injury*, and [***39] (3) refer to the *same instrumentality*, as the original one. [Citations.]" ( *Norgart v. Upjohn Co., supra*, 21 Cal.4th at pp. 408-409.) In addition, "a new plaintiff *cannot* be joined after the statute of limitations has run where he or she seeks to enforce an *independent right* or to impose greater liability upon the defendant." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2005) ¶ 6:787, pp. 6-157-6-158.)

Here, we readily conclude, as did the court below, that the survivor cause of action pleaded a *different injury* than the initial complaint. We also conclude that the two claims in the amended pleading were asserted by different plaintiffs, Maria G. Quiroz acting in two separate capacities with respect to each, and that the addition of fresh allegations concerning her representative capacity in pursuit of the new [**239] survivor claim was not just the mere technical substitution of the proper party plaintiff on a previously existing claim. This survivor claim, which plaintiff pursued as the decedent's successor in interest, pleaded injury to the decedent, Gilbert Quiroz. In contrast, the earlier-filed wrongful death claim [***40] pleaded only injury to plaintiff, acting for herself, as the decedent's heir. As a matter of law, these distinct claims are technically asserted by different plaintiffs and they seek compensation for different injuries. ( *Bartalo v. Superior Court* (1975) 51 Cal. App. 3d 526, 533 [124 Cal. Rptr. 370] [husband's claim for loss of consortium was wholly different legal liability or obligation from wife's personal injury claim and therefore it did not relate back]; *Dominguez v. City of Alhambra* (1981) 118 Cal. App. 3d 237, 243 [173 Cal. Rptr. 345] [plaintiff could not amend her complaint for wrongful death after the statute of limitations had passed to state wholly distinct survivor cause of action for decedent's injuries]; *Shelton v. Superior Court* (1976) 56 Cal. App. 3d 66, 69-81 [128 Cal. Rptr. [*1279] 454].) Accordingly, the doctrine of relation back does not apply and the entire survivor claim is barred by the statute of limitations.

On the same reasoning, courts have reached the opposite result--permitting the relation-back doctrine to save a cause of action from the bar of the statute of limitations--in cases in which the converse scenario [***41] is presented. A claim that is first asserted by amendment after the limitations period has passed will not be barred so long as the amendment is based on the same general set of facts and involves the *same injury*. This holds true even where the amendment names or substitutes a new party plaintiff, as long as the new plaintiff is not seeking to enforce an independent right or to impose a greater liability on the defendant. ( *Klopstock v. Superior Court* (1941) 17 Cal.2d 13, 20-22 [108 P.2d 906] [plaintiff entitled to benefit of relation back to substitute proper party plaintiff as long as cause of action against defendant has not factually changed such that amendment asserts wholly distinct legal obligation]; *Pasadena Hospital Assn., Ltd. v. Superior Court* (1988) 204 Cal. App. 3d 1031, 1034-1037 [251 Cal. Rptr. 686] [relation-back doctrine will apply where plaintiff timely filed complaint and later sought amendment to add his professional corporation as a plaintiff because both plaintiffs were asserting the *same injury and damages* and the substantive basis of the cause of action had not changed]; *Garrison v. Board of Directors* (1995) 36 Cal.App.4th 1670 [43 Cal. Rptr. 2d 214]; [***42] [relation-back doctrine applied to save identical cause of action stated by substi-

tuted plaintiff since *no new or different obligation* was alleged by amendment].)

**(8)** The trial court here correctly viewed the untimely survivor cause of action as pleading a different injury than the original cause of action for wrongful death. The survivor cause of action was asserted by a technically different plaintiff asserting an independent and greater liability against defendants. This new claim was first asserted after the running of the statute of limitations, and because the injuries to be compensated by the two claims are different, the relation-back doctrine does not apply. The survivor cause of action, whether construed as a claim for negligence or for statutory dependent-adult abuse, is therefore barred.

Appellant attempts to circumvent this result by contending that the broadly construed standing provisions of the Elder Abuse Act somehow expand the application of the relation-back doctrine so as to save her survivor claim. She relies on *Estate of Lowrie (2004) 118 Cal.App.4th 220 [12 Cal. Rptr. 3d 828]* (*Lowrie*) in support [**240] of this contention. This reliance displays a misunderstanding [***43] of the procedural requirement of standing, which has nothing to do with the bar of the statute of limitations or the doctrine of relation back. This reliance also hinges on a loose, overbroad reading and application of the [*1280] Elder Abuse Act, which, despite its remedial purposes, does not displace or alter fundamental legal and procedural principles generally applicable to civil actions.

The court in *Lowrie* held that under *Welfare and Institutions Code section 15657.3, subdivision (d)*, a granddaughter, as an "interested person," had standing to maintain a *survivor cause of action* for elder abuse on behalf of her decedent grandmother.[28] (*Lowrie, supra, 118 Cal.App.4th at pp. 225-229*.) The plaintiff's uncle, decedent's son, was the designated personal representative of the decedent's estate, and the granddaughter was the successor representative. Therefore, under *Welfare and Institutions Code section 15657.3*, the right to maintain the action on behalf of the decedent was transferred to her son upon the decedent's death. But the decedent's son was also the one who the trial court found had committed [***44] elder abuse, disqualifying him from inheritance rights under *Probate Code section 259*. The trial court concluded that under these circumstances, the granddaughter as the successor representative was entitled to succeed to the decedent's estate and thus had standing to maintain the survivor action for elder abuse. The court of appeal affirmed.

---

28    *Welfare and Institutions Code section 15657.3, subdivision (c)*, provides that "[t]he death of the elder or dependent adult does not cause the court to lose jurisdiction of any claim for relief for abuse of an elder or dependent adult." *Subdivision (d)* then provides that "[u]pon petition, after the death of the elder or dependent adult, the right to maintain an action shall be transferred to the personal representative of the decedent, or if none, to the person or persons entitled to succeed to the decedent's estate."

---

The court of appeal's holding in *Lowrie* rested on the express legislative purpose of the Elder [***45] Abuse Act, which was intended to "enable interested persons to engage attorneys to take up the cause of abused elderly persons and dependent adults." (*Welf. & Inst. Code, § 15600, subd. (j)*.) This statement of legislative intent, the court found, "suggests the Legislature intended a broad definition of standing in the context of elder abuse cases." (*Lowrie, supra, 118 Cal.App.4th at p. 227*, fn. omitted.)

Thus, while *Lowrie* construed a section of the Elder Abuse Act broadly, consistently with the Act's legislative purposes, it did not render any holding that bears on the instant case. The court in *Lowrie* did not decide any issue related to the statute of limitations or the relation-back doctrine—the dispositive issue here. Instead, it addressed only the issue of standing under the Elder Abuse Act. No one here even disputes that Maria G. Quiroz enjoyed standing to pursue a dependent-adult abuse survivor claim on behalf of her son, the decedent. But this does not conceptually or logically lead to application of the relation-back doctrine to save the survivor action from the bar of the statute of limitations. [*1281]

**(9)** In support of her argument [***46] that *Lowrie* aids her cause, appellant blurs the notion of standing beyond its conceptual borders to the point of distortion. In this, she obscures the legal distinction between survivor and wrongful death claims. She also overlooks the fact that these respective claims are brought by or on behalf of *different parties* and that the Elder Abuse Act, which provides for specified claims and remedies only to *victims* of the abuse, does not change this fundamental legal [**241] principle. A survivor claim, by definition, is asserted on behalf of such a victim—here, the decedent, Gilbert Quiroz—whereas a wrongful death claim is asserted by a decedent's heir, on his or her own behalf. Simply put, a broadly construed standing provision under the Elder Abuse Act does not morph an ordinary wrongful death claim into a statutory survivor claim for dependent adult abuse—or vice versa. Nor does it change the separate character of the injuries that are compensable through these distinct claims that are brought by different parties. Nor *does it alter the application of the statute of limitations or expand the circumstances under which the doctrine of relation back operates to spare a tardy cause [***47] of action from that bar.* For these reasons, *Lowrie* is of no help to appellant here.

**(10)** It is true, as appellant contends, that it is improper for a court to strike a whole cause of action of a pleading under *Code of Civil Procedure section 436*. As we have said, what the court essentially did here with respect to the entire survivor claim was to strike it. While under *section 436*, a court at any time may, in its discretion, strike portions of a complaint that are irrelevant, improper, or not drawn in conformity with the law, matter that is essential to a cause of action should not be struck and it is error to do so. ( *Clements v. T. R. Bechtel Co. (1954) 43 Cal.2d. 227, 242 [273 P.2d 5]*.) Where a whole cause of action is the proper subject of a pleading challenge, the court should sustain a demurrer to the cause of action rather than grant a motion to strike. ( *Triodyne, Inc. v. Superior Court (1966) 240 Cal. App. 2d 536, 542 [49 Cal. Rptr. 717]*.)

But in this case, in which the cause of action was susceptible to summary adjudication on the very motion that defendants had brought, the court's error in employing the wrong procedural vehicle [***48] with which to dispose of the claim was not prejudicial. Accordingly, we will not disturb the court's disposition of the survivor claim on the basis of this error. That disposition in the end amounted to a grant to defendants of judgment on the pleadings, a correct result in this case.

Appellant did seek leave in the trial court to file an amended pleading, but the bar of the statute of limitations affecting the survivor cause of action was not cured by the proposed amendment. Nor could it have been by further amendment. Accordingly, upon our review of the trial court's denial of appellant's request for leave to amend, we find no abuse of discretion, which [*1282] is the applicable standard governing our review of this issue. ( *Cloud v. Northrop Grumman Corp. (1998) 67 Cal.App.4th 995, 1011 [79 Cal. Rptr. 2d 544]*.)

While the bar of the statute of limitations may be considered a harsh result where there is an otherwise meritorious cause of action, as a matter of policy, this defense "operates conclusively across-the-board. It does so with respect to *all* causes of action, both those that do not have merit and also those that do. That it may bar meritorious causes of action as well as unmeritorious [***49] ones is the 'price of the orderly and timely processing of litigation' [citation]--a price that may be high, but one that must nevertheless be paid." ( *Norgart v. Upjohn Co., supra, 21 Cal.4th at p. 410*, fn. omitted.)

III. *Plaintiff Has No Claim, in Her Own Right, Under the Elder Abuse Act*

As best as we can decipher it, appellant's other major contention is that the trial court erred by striking the Elder Abuse Act allegations and prayer from the complaint because, she argues, these matters related to her timely filed wrongful [**242] death claim. This contention is premised on the notion that the Elder Abuse Act is so broad as to afford appellant a claim under it such that she is entitled to the Act's heightened remedies, including attorney fees, on her own wrongful death claim. A related contention is that it was error for the court to strike the allegations from the complaint because this had the effect of preventing appellant from pursuing her wrongful death claim and recovering heightened remedies under the Elder Abuse Act based on a theory of negligence per se for defendants' alleged violations of the Act.

An order striking all or part of a pleading under [***50] *Code of Civil Procedure section 435 et seq.* is reviewed for abuse of discretion. ( *CLD Construction, Inc. v. City of San Ramon (2004) 120 Cal.App.4th 1141, 1145 [16 Cal. Rptr. 3d 555]*.) This means that the reviewing court will disturb the ruling only upon a showing of a " ' "clear case of abuse" ' " and a " ' "miscarriage of justice." ' " ( *Blank v. Kirwan (1985) 39 Cal.3d 311, 331 [216 Cal. Rptr. 718, 703 P.2d 58]*; see *Denham v. Superior Court (1970) 2 Cal.3d 557, 566 [86 Cal. Rptr. 65, 468 P.2d 193]*.) Discretion is abused only when, in its exercise, the trial court " 'exceed[ed] the bounds of reason, all of the circumstances before it being considered.' " ( *Denham v. Superior Court, supra, 2 Cal.3d at p. 566*.)

Appellant's contention that the breadth of the Elder Abuse Act provides her with her own independent claim through which she may recover heightened remedies rests on an erroneous reading of the Act and its legislative history. She urges us to construe the Act to afford her such a claim with accompanying remedies. Yet she cites no section of the Act that actually provides for [*1283] this. She contends that *Welfare and Institutions Code section 15657* [***51] should be so construed, but its actual text does not lend itself to this broad construction. Nor can appellant point to any part of the Act's legislative history that suggests that this construction was intended. Indeed, the legislative history of the 1991 amendments to the Elder Abuse Act, of which we have taken judicial notice, demonstrates that the enhanced remedies provided under the Act were intended to apply to actions by or on behalf of *victims* of elder or dependent care abuse. The legislative history does not reveal any intent to apply the Act to a wrongful death action brought by a decedent's heir on his or her own behalf.

It is true that the express purpose of the Act is to "enable interested persons to engage attorneys to take up the cause of abused elderly persons and dependent adults." (*Welf. & Inst. Code, § 15600, subd. (j)*.) *Welfare and Institutions Code section 15600* additionally recognizes the special vulnerability of the elderly and those who are either disabled or for some other reason dependent upon others for their personal or financial care. The

Case 3:07-cv-03747-PJH   Document 48-5   Filed 03/26/2008   Page 18 of 20

Page 17
140 Cal. App. 4th 1256, *; 45 Cal. Rptr. 3d 222, **;
2006 Cal. App. LEXIS 984, ***; 2006 Cal. Daily Op. Service 5880

Elder Abuse Act also recognizes that such persons are [***52] in need of special governmental protection and assistance. ( *Delaney v. Baker (1999) 20 Cal.4th 23, 33 [82 Cal. Rptr. 2d 610, 971 P.2d 986]*.) *Welfare and Institutions Code section 15600, subdivision (j)* explains that article 8.5 of the Elder Abuse Act, commencing with *section 15657*, was enacted to facilitate and encourage the prosecution of civil actions by or on behalf of abused or neglected elderly or dependent persons.

It is also true that the Act's legislative history highlights its remedial nature and demonstrates that the Act's purposes include encouraging claims to be brought on behalf of victims of abuse. Apropos of this, as we have already observed, the procedural requirement of standing is broadly construed under the Act. ( *Lowrie,* [**243] *supra, 118 Cal.App.4th at pp. 230-231*.) And in specified cases, heightened remedies are available, including damages for the victim's predeath pain, suffering, and disfigurement in a *survivor* action brought or maintained after the victim's death. (*Welf. & Inst. Code, § 15657*.)

The legislative purpose in allowing for heightened remedies in a survivor action under the Elder Abuse Act was [***53] to "enable interested persons to engage attorneys to take up the cause of abused elderly persons and dependent adults." (*Welf. & Inst. Code, § 15600, subd. (j)*; see *Covenant Care, Inc. v. Superior Court (2004) 32 Cal.4th 771, 779 [11 Cal. Rptr. 3d 222, 86 P.3d 290]* (*Covenant Care*).) The Legislature amended the Elder Abuse Act in 1991 to provide for these heightened remedies in order to shift "the focus in protecting vulnerable and dependent adults from reporting abuse and using law enforcement to combat it, 'to private, civil enforcement of laws against elder abuse and neglect. "[T]he Legislature declared that 'infirm elderly [*1284] persons and dependent adults are a disadvantaged class, that cases of abuse of these persons are seldom prosecuted as criminal matters, and few civil cases are brought in connection with this abuse due to problems of proof, court delays, and the lack of incentives to prosecute these suits.' ([*Welf. & Inst. Code,*] *§ 15600, subd. (h)*, added by Stats. 1991, ch. 774, § 2.) ... [Citation.]" [Citation.] As was stated in the Senate Rules Committee's analysis of Senate Bill No. 679, "in practice, the death of the victim [***54] and the difficulty in finding an attorney to handle an abuse case where attorneys fees may not be awarded, impedes many victims from suing successfully. [¶] This bill would address the problem by: ... authorizing the court to award attorney's fees in specified cases; [and by] allowing pain and suffering damages to be awarded when a verdict of intentional and reckless abuse was handed down after the abused elder dies." (Sen. Rules Com., Analysis of Sen. Bill No. 679 (1991-1992 Reg. Sess.) as amended May 8, 1991, p. 3.)' *Delaney [v. Baker], supra, 20 Cal.4th at p. 33*.)" ( *Covenant Care,* *supra, 32 Cal.4th at pp. 784-785*.) In other words, when attorney fees are available and the amount of the potential recovery is higher because of the availability of damages for the victim's predeath pain and suffering, more attorneys will have incentive to take and pursue a victim's case, even if the victim has died or might die during the course of litigation.

But, contrary to appellant's entreaties, none of these indicators of the Act's expansive scope or character means that a relative or an heir of an elder or dependent adult has an independent claim [***55] under the Act or that such a person may recover statutory heightened remedies in his or her own wrongful death claim. Under the Act, these claims and remedies are afforded only to *victims* of elder or dependent adult abuse. In the event of the victim's death, the cause of action survives, in which case it is or becomes a survivor action pursued by the personal representative of the estate or the decedent's successor in interest *on the decedent's behalf.* Accordingly, appellant has not demonstrated here that the court abused its discretion in striking the elder abuse allegations and prayer from the complaint vis-à-vis her own wrongful death cause of action.

In a related contention, appellant asserts that the court's action in striking the elder abuse allegations and prayer deprived her of her ability to pursue her wrongful death claim, and thereby recover heightened remedies under the Elder Abuse Act, on a theory of negligence per se based on defendants' alleged violations of the Act. This contention assumes, incorrectly, [**244] that "negligence per se" is an independent right of action and that appellant was precluded from proving her wrongful death claim via a statutory presumption [***56] of negligence in the absence of the pleaded Elder Abuse Act allegations. But this is not so. The argument also assumes that if appellant had prevailed on her wrongful death claim through proof of negligence per se, she would have been entitled to heightened remedies under the Act. This is not so either. [*1285]

(11) "Negligence per se" is an evidentiary doctrine codified at *Evidence Code section 669*. Under subdivision (a) of this section, the doctrine creates a presumption of negligence if four elements are established: (1) the defendant violated a statute, ordinance, or regulation of a public entity; (2) the violation proximately caused death or injury to person or property; (3) the death or injury resulted from an occurrence the nature of which the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted. ( *Spates v. Dameron Hospital Assn. (2003) 114 Cal.App.4th 208, 218 [7 Cal. Rptr. 3d 597]*.) These latter two elements are determined by the court as a mat-

ter of law. ( *Galvez v. Frields* (2001) 88 Cal.App.4th 1410, 1420 [107 Cal. Rptr. 2d 50].) [***57]

**(12)** If the presumption of negligence is established under *subdivision (a) of Evidence Code section 669*, it may be rebutted under *subdivision (b)* by proof that "(1) [t]he person violating the statute, ordinance, or regulation did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law; or [¶] (2) [t]he person violating the statute, ordinance, or regulation was a child and exercised the degree of care ordinarily exercised by persons of his maturity, intelligence, and capacity under similar circumstances, but the presumption may not be rebutted by such proof if the violation occurred in the course of an activity normally engaged in only by adults and requiring adult qualifications." (*Evid. Code, § 669, subd. (b)*.)

Thus, the doctrine of negligence per se does not establish tort liability. Rather, it merely codifies the rule that a presumption of negligence arises from the violation of a statute which was enacted to protect a class of persons of which the plaintiff is a member against the type of harm that the plaintiff suffered as a result of the violation. [***58] ( *Peart v. Ferro* (2004) 119 Cal.App.4th 60, 80, fn. 11 [13 Cal. Rptr. 3d 885].) Even if the four requirements of *Evidence Code section 669, subdivision (a)*, are satisfied, this alone does not entitle a plaintiff to a presumption of negligence *in the absence of an underlying negligence action.* ( *California Service Station etc. Assn. v. American Home Assurance Co.* (1998) 62 Cal.App.4th 1166, 1177-1178 [73 Cal. Rptr. 2d 182]; *Rosales v. City of Los Angeles* (2000) 82 Cal.App.4th 419, 429-430 [98 Cal. Rptr. 2d 144].)

Accordingly, to apply negligence per se is not to state an independent cause of action. The doctrine does not provide a private right of action for violation of a statute. ( *Sierra-Bay Fed. Land Bank Assn. v. Superior Court* (1991) 227 Cal. App. 3d 318, 333-334 [277 Cal. Rptr. 753].) Instead, it operates to establish a presumption of negligence for which the statute serves the [*1286] subsidiary function of providing evidence of an element of a preexisting common law cause of action. ( *Crusader Ins. Co. v. Scottsdale Ins. Co.* (1997) 54 Cal.App.4th 121, 125 [62 Cal. Rptr. 2d 620].) [**245]

That the doctrine of negligence per se is an evidentiary presumption rather than an independent [***59] right of action demonstrates the fallacy of appellant's contention. The trial court's striking of the elder abuse allegations from her pleading did not deprive her of the ability to pursue any particular cause of action by proof of negligence per se. Simply put, the doctrine of negligence per se did not furnish appellant with an independent claim or basis of liability of which the trial court's action deprived her. Therefore, there is no merit to her claim of error.

And even after the trial court struck the Elder Abuse Act allegations from her pleading, to the extent appellant wished to invoke the doctrine of negligence per se to prove her remaining case at trial, she was free to argue the application of *Evidence Code section 669*, to offer evidence of defendants' alleged statutory violations to support the presumption of negligence, and to submit proposed jury instructions on the point. If the court had issued rulings adverse to plaintiff on these matters, she then could have raised this claim of error by appealing from the ultimate judgment. Instead, at trial, appellant voluntarily dismissed her claims, the manner of proof of which was the only applicable vehicle [***60] through which negligence per se--a doctrine that is limited to furnishing a rebuttable presumption of negligence--could be invoked. [29]

> 29   Because appellant voluntarily dismissed her wrongful death claim, we need not and do not decide the question whether negligence per se may be invoked to prove neglect under the Elder Abuse Act. Appellant cites *Norman v. Life Care Centers of America, Inc.* (2003) 107 Cal.App.4th 1233 [132 Cal. Rptr. 2d 765], in support of this proposition. But because the trial court never ruled on this issue in the instant case, and appellant was thus never aggrieved by an adverse ruling on this issue, we express no opinion on it. ( *Covenant Care, supra,* 32 Cal.4th at p. 789, fn. 10 [Supreme Court citing *Norman,* and noting, "we have no occasion to decide whether or on what theory a plaintiff may be able to obtain common law remedies for ordinary negligence that also constitutes neglect as defined in the Elder Abuse Act"].)

More to the heart of appellant's [***61] contention, even if she had successfully proved her wrongful death claim through the statutory presumption of negligence per se, this still would not have entitled her to heightened remedies under the Elder Abuse Act. As we have already concluded, appellant was not entitled to these remedies in conjunction with her own wrongful death claim. They were only potentially available on the survivor cause of action brought on behalf of Gilbert Quiroz--the victim of the alleged abuse. But, as we have already determined, that claim was barred by the statute of limitations, precluding any recovery of enhanced remedies under the Elder Abuse Act in this case. [*1287]

DISPOSITION

The judgment is affirmed.

Page 19

140 Cal. App. 4th 1256, *; 45 Cal. Rptr. 3d 222, **;
2006 Cal. App. LEXIS 984, ***; 2006 Cal. Daily Op. Service 5880

Rushing, P. J., and Premo, J., concurred.